THE SCHMITT REALTY & INVESTMENT CO. ET AL. *v.* MONKS ET AL.

(Decided May 13, 1929.)

*Messrs. Henderson, Quail, McGraw & Morgan,* for plaintiffs in error.
*Messrs. Bernon, Mulligan, Keeley & LeFever,* for defendants in error.

LEVINE, J. The parties appear here in an order the reverse of that occupied in the trial court. This action was commenced in the common pleas court by Mabel B. Monks and Thomas E. Monks for dissolution of the Schmitt Realty & Investment Company, as owners of one-third or more of the capital stock of the corporation, under favor of Section 11938, General Code (72 Ohio Laws, 138). This section has since been repealed and has been replaced by Section 8623-86, General Code (112 Ohio Laws, 43), as part of the new Corporation Act. Section 11938 reads:

"When * * * stockholders representing not less than one-third of the capital stock of a corporation, * * * deem it beneficial to the interests of the stockholders that the corporation be dissolved * * * they may apply by petition to the common pleas court * * * for its dissolution pursuant to the provisions of this chapter."

Under the procedure outlined by Sections 11939 to 11978, General Code, the case was referred to A. G. Newcomb, as referee, "to hear the allegations and proofs of such parties, take testimony * * * and * * * report [the same] to the court, with a statement of the property, effects, debts, credits, and engagements of the corporation, and of all other matters and things pertaining to its affairs." The

referee thereupon proceeded to hear the testimony, and later made his report to the court of common pleas. When the case came up before the common pleas court upon the testimony, exhibits, and findings of the referee, and the exceptions of defendants thereto, the court, after a hearing, entered the final judgment and order in favor of defendants in error, dissolving the Schmitt Realty & Investment Company, and appointing a receiver for its estate and effects. This judgment was in accordance with the report of the referee. A motion for new trial was duly filed and overruled.

The original defendant in the case was the Schmitt Realty & Investment Company, the corporation whose dissolution was sought by the plaintiffs. Later the defendants, Theodore Schmitt, Walter J. Schmitt, Emma Schmitt, and Frank H. Hauschka, the remaining stockholders in the corporation, were allowed to intervene and file their answer opposing the dissolution sought by the defendants in error. The action of the common pleas court in ordering the dissolution was taken under Section 11943, General Code (64 Ohio Laws, 154), which provides:

"When the report is made, if it appears to the court that the corporation is insolvent, or that its dissolution will be beneficial to the stockholders, and not injurious to the public interest, or that the objects of the corporation have wholly failed, or been entirely abandoned, or that it is impracticable to accomplish such objects, a judgment shall be entered dissolving the corporation, and appointing one or more receivers of its estate and effects. The corporation thereupon shall be dissolved and cease."

The court found from the evidence that dissolu-

tion of the corporation would be beneficial to the stockholders and not injurious to the public interest. There was no claim of insolvency on any of the other grounds set forth in the statute. The sole issue in the case, the one which the common pleas court decided, was whether the situation presented by the evidence showed that the dissolution of the corporation would be beneficial to the stockholders. The trial court held that it would be beneficial to the stockholders, and ordered a dissolution accordingly. Plaintiffs in error contend that the court committed error in so finding and in decreeing a dissolution.

The record discloses that the company was organized in 1915 to deal in real estate; that its operations were profitable until about the beginning of 1926, at which time they ceased to be profitable, and that since that time its sole business has been confined to the maintenance and care of the properties theretofore acquired. The net worth of the company is approximately $400,000. Its assets, in addition to cash, accounts receivable and certain stocks in other corporations, consist entirely of real property. The total outstanding capital stock of the company consists of 500 shares, of which 304 shares are owned by defendants, Theodore Schmitt, Emma Schmitt, his wife, Walter J. Schmitt, his son, and Frank Hauschka, an employe. The remainder, to wit, 196 shares, are owned by the defendants in error herein. Prior to 1920 the company paid no dividends on the common stock, and paid no salaries. In 1920, upon advice of counsel, the policy of the company was changed. Beginning in 1920, and continuing until the beginning of 1927, there was paid to Theodore Schmitt $300 per month, to Thomas E. Monks $300

per month, and to Walter J. Schmitt $400 per month. These sums, paid as salaries, were determined in proportion to the amount of stock held by the various parties, except that Walter J. Schmitt was allowed an extra $100 per month for collecting the rents. A reading of the record leads us to the conclusion that these sums paid to the various parties, while paid in the form of salaries, were in fact in lieu of common stock dividends, and totaled about $1,000 per month. Until 1926 the Monks and the Schmitts were on friendly terms. When the company started, it was through Mr. Schmitt's solicitation that Mr. Monks invested his services in the company for the first stock that he received, and he thereby became interested in the company. While the harmonious relations existed, the company made progress and was highly successful.

In 1926 discord and strife began to arise between the Monks and the Schmitts. The parties lost confidence in each other, and their respective judgments concerning the operation of the company came into serious conflict. In the latter part of 1926 the affairs of the corporation were taken over by the rental department of the Guardian Trust Company, and Walter Schmitt lost his job. This incident increased the discord between the parties. In January, 1927, at a regular meeting, the Schmitt interests voted a discontinuance of Mr. Monks' salary of $300 per month, paid in lieu of dividends, increased Walter Schmitt's salary by that amount, and voted an alleged salary of $25 per month to Frank Hauschka, so that thereafter the Monks received nothing from the company, whereas Theodore Schmitt received $300 per month, Walter Schmitt received $700 per

month, and Frank Hauschka, $25. In other words, since January, 1927, the Schmitts have been receiving from the company $12,300 per year on their shares of stock, while the Monks received nothing. It is not straining the record to state that this expenditure of $12,300 per year under the circumstances, which reveal that the activities of the company are confined to the maintenance and care of the property heretofore acquired, and to the collection of rents, is far in excess of what would be required by a rental agency. There is considerable conflict between counsel as to whether or not since 1926 the company operated at a substantial loss. This much, however, must be conceded, namely, that it made no profit; that, in so far as the stockholders are concerned, the affairs of the company showed no profit from which dividends in the form of salaries could be paid; that this is but one of the incidents which led to the strained relation between the parties. The trial court found from all the evidence that the relationship of the minority stockholders to the majority stockholders is such that there can be no reasonable hope of future harmonious co-operation; that, because of the lack of harmonious co-operation between the parties, and their workings to opposite ends and purposes, the property and assets of the company are bound to depreciate and diminish, and that therefore it will be beneficial to all the stockholders that the company be dissolved.

In interpreting the phrase, "will be beneficial to the stockholders," used in the Code, no reference can be had to any particular stockholder. Benefits accruing to some stockholders and not to others must be eliminated. Such interpretation requires the con-

sideration of only those things that affect equally all stockholders, as such. This is reasonable, because, in a dispute which arises between minority and majority stockholders, it is most often the case that what is harmful to the minority proves beneficial to the majority, as individuals.

Both sides seem to concede the point that considerations which do not affect alike the owners of both the majority and the minority stock must be eliminated.

In *Summers* v. *Thomas Mfg. Co.*, 82 Ohio St., 338, 92 N. E., 482, there are some illuminating statements found in the opinion of the court, on pages 344, 349 and 350 (92 N. E., 484):

"The evidence submitted upon the hearing of the motion is all embodied in the bill of exceptions, upon which the Circuit Court affirmed the judgment, and it is now presented to us. The duty with which the court of common pleas was charged upon the hearing was to exercise a legal discretion in determining whether the interests of the stockholders, the interests in which those who own a minority of the shares and those who own a majority, are identical in all respects, probably required that the corporation should be dissolved. The terms of the statute show that the relief which it affords is to be upon the initiative of the owners of a minority of the shares; it being obvious that the owners of the majority of the shares, having control of the affairs of the corporation, may, by the exercise of their power and by resorting to other provisions of the statute, protect their own interests. The purpose of the statute is to give practical effect to the manifest truth that, so far as the stockholders are concerned, the only

legitimate purpose in the operation of private corporations is the realization of dividends as returns upon investments in shares. No other consideration peculiar to the owners of a majority of shares and inducing them to oppose the dissolution is entitled to any consideration whatever. * * *

"There being in the record no conflict in the evidence respecting the facts which are controlling in their nature, there remains only the duty of applying the law to those facts, in so far as the question of a *prima facie* case is concerned. To require the minority stockholders to submit longer to a wholly unprofitable investment in its shares would be inconsistent with natural justice, with legitimate business enterprise, and with the terms and manifest purpose of the statute."

Accordingly the court must consider only those matters that affect alike all the stockholders as stockholders.

Considerable space is devoted in the briefs of counsel for plaintiffs in error to the argument that, in considering whether or not a dissolution will be beneficial to the interests of the stockholders, the court must bear in mind whether other remedies not as drastic as the dissolution of the company will be sufficiently effective to eliminate abuses. It is contended that a court of equity could give injunctive relief to stop the payment of excessive salaries and other abuses which may creep into the operation of the company. The trial court apparently took the view that the action of the majority stockholders, in voting for themselves excessive salaries, was but one of the incidents which led to the present situation. The concession that there may be need for a

resort to the equitable processes of the court, in order to remedy the situation, adds strength to the position of the trial court in decreeing dissolution, as it casts dismal reflections upon the future prospects of the company.

In judging of the prospects of the company, the trial court is supported by evidence in having reached the conclusion that the situation which existed, namely, the unhealable breach between the minority and majority stockholders, caused by a number of incidents which preceded it, shows that the company cannot successfully function and that the continuance of the corporation will cause a business loss and a sacrifice of its property.

The mere ability of the minority stockholders to resort to the process of injunction by way of remedying some of the abuses will not bridge the gap now existing between the contending factions; nor will it bring about future harmonious co-operation; nor does it furnish a more favorable view of the company's prospects. Quite the contrary is true.

Litigation of the character suggested intensifies the feeling between the parties, and makes their relations even more strained. It is the common experience of the business world that embittered litigation between factions in a corporation tends to reduce the value of the corporation's assets. It has a destructive and depreciating effect, which in some cases leads to utter disorganization.

The trial court reached the conclusion from the facts presented to it that the dissolution of the corporation will be beneficial to the stockholders. It made a finding of fact supported by some evidence.

In order that this reviewing court be empowered

to reverse this finding of the common pleas court it would have to first find from the record that the finding and judgment of the common pleas court are manifestly against the weight of the evidence. We are unable to reach such a conclusion, and the judgment of the common pleas court is therefore affirmed.

*Judgment affirmed.*

VICKERY, P. J., and SULLIVAN, J., concur.